IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| Leslie Miller, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | C.A. NO. 6:23-cv-328 | |
| § | | |
| § | | |
| Waco Healthcare LLC § | | |
| D/B/A Waco Healthcare and Rehabilitation § | | |
| Center § | | |
| § | **JURY DEMANDED** | |
| § | | |
| Defendant. § | | |

### Plaintiff Leslie Miller's Complaint

Plaintiff, Leslie Miller, (Miller) files this Complaint and Jury Demand against Defendant Waco Healthcare LLC (d/b/a Waco Healthcare and Rehabilitation Center) (WHR), alleging willful violation of the Family and Medical Leave Act.

WHR fired Miller because she had to leave work for an urgent medical appointment. Thank goodness she did go to that appointment. At the appointment she learned there was a spot on her eye that would need to be tested for cancer. A subsequent biopsy would show that, sadly, the spot was cancerous.

A WHR human resources representative walked Miller out of the facility and took her keys.

For causes of action, Plaintiff would show the Court as follows:

### I.
### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Leslie Miller is a resident of Bosque County, Texas.
2. Defendant Waco Healthcare LLC is an entity which can be served with Citation through its Registered Agent, Vcorp Services, LLC, 1999 Bryan Street, Suite 900 Dallas TX 75201-3136.

3. This Court has jurisdiction to hear the merits of Millers claims under 28 U.S.C. §1331 and 42 U.S.C. §2617.

4. Venue is proper in this district and division under 42 U.S.C. §12117(a) (incorporating 42 U.S.C. §2000e-5(f)(3)) and 28 U.S.C. §1391(b)(1) because the incidents that gave rise to the claims in this case occurred in McLennan County, Texas.

## II.

## FACTUAL BACKGROUND

1. Defendant WHR hired Plaintiff Miller in November 2019 to serve as Assistant Director of Nursing (ADON).

2. Miller's 15 years' experience as a nurse - and over eight years' experience in management – WHR knew she was well qualified for the position.

3. Miller performed well for WHR under extremely difficult circumstances.

4. For two months Miller served as ADON with limited staff and no Director of Nursing.

5. Despite these hardships, Miller performed exceptionally well, even as WHR dealt with the horrifying effects of the global COVID-19 pandemic.

6. Miller did not shy away from the hard work and extended hours required to care for WHR's residents.

7. Miller performed this difficult work under difficult circumstances. All the while she was dealing with medical conditions of her own – lupus, rheumatoid arthritis, and osteo-arthritis.

8. WHR's Director of Nursing, Director of Nursing, Tequila Alexander, WHR Administrator, Melissa Harris, were aware that Miller had lupus.

9. WHR knew that Miller needed regular doctor visits to manage her condition.

10. WHR knew that Miller was out sick for about a week just prior to her termination. She had to go to the hospital because her lupus flared up.

11. On May 6, 2021, Director Alexander learned that Miller needed to attend a doctor appointment so that she could get her medication refilled.

12. Director Alexander refused to let Miller go to the appointment. She told Miller she would consider it a resignation if she went.

13. Director Alexander knew that this appointment and this medication were crucial to the management of Miller's conditions.

14. Director Alexander knew that if Miller were to miss that doctor appointment, it would have been another three months before Miller could reschedule the appointment.

15. Being without medication for two months would have totally incapacitated Miller and left her unable to work at all. But Director Alexander did not care.

16. On May 6th, a WHR human resources representative, Debbie Matthews, walked Miller out of the facility and took her keys.

17. HR rep Matthews told Miller that she did not think what was happening was legal.

18. Miller went to her doctor appointment on May 6th, and it is a good thing that she did.

19. At the May 6th appointment Miller learned there was a spot on her eye that would need to be tested for cancer. A subsequent biopsy would show that, sadly, the spot was cancerous.

20. Miller tried to get her job back. She wrote Administrator Harris a letter to re-explain the circumstances and emphasize that she was not resigning.

21. Miller contacted WHR's owner, Isaac Sonenblick, and told him what happened.

22. Owner Sonenblick said he was "heartbroken" and told Miller to contact Administrator Harris and Director Alexander to get this resolved. But Harris and Alexander never responded.

23. When Miller followed up with Owner Sonenblick, he acknowledged that Alexander would not allow her to return.

24. WHR's Medical Director, Dr. James Pettit, hired Miller to perform monthly tele-health rounds in July, but Alexander put a stop to that as well.

## III.
## CAUSES OF ACTION
### Interference and Retaliation in Violation of the Family and Medical Leave Act

25. The Family and Medical Leave Act contains two distinct provisions: (1) an entitlement clause and (2) an anti-discrimination clause. *See* 29 U.S.C. §§ 2612, 2615. The entitlement clause provides a series of entitlements which give certain rights to employees such as the right to take leave to go to a doctor appointment to get treatment for a serious health condition and the right to have their job back once they return from qualified leave.

26. The FMLA also contains provisions that make it unlawful for an employer to retaliate against an employee for taking FMLA leave. *See* 29 U.S.C. §2615(a) and 29 U.S.C. §2615(b).

27. Defendant is in willful violation of the FMLA. Defendant violated 29 U.S.C. §2612, §2614 and 29 U.S.C. §2615(a) and 29 U.S.C. §2615(b).

28. Plaintiff was an "eligible employee" under the FMLA. She was employed by Defendant for over 12 months, and she worked at least 1,250 hours of service with Defendant during the 12-month period before her termination.

29. Plaintiff had a "serious health condition" because she had an illness, impairment, or physical condition that involved continuing treatment by a health care provider.

30. Defendant was an "employer" that must follow the FMLA because it is engaged in commerce (or in any industry or activity affecting commerce), and it employed 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year as of May 6, 2021.

31. Plaintiff availed herself of a protected right under the FMLA and was terminated that same day.

32.     There is a direct causal connection between the Plaintiff's protected activity and Defendants' decision to terminate Plaintiff.

33.     Plaintiff's taking of FMLA was a motivating factor in the decision to terminate, and as such was a cause of Plaintiff's damages, as set forth below.

34.     In addition, an employee who takes FMLA leave shall be entitled, on return from such leave, to be restored by the employer to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. Furthermore, the taking of FMLA leave shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced. Defendants have violated these provisions of the FMLA by terminating Plaintiff while because she needed FMLA leave and refusing to reinstate her into her position following her FMLA leave.

## IV.
## DAMAGES

35.     As a result of Defendants' unlawful conduct, Plaintiff has suffered economic and actual damages, interest on back pay, future wages or front pay, lost earnings in the past and future, lost benefits under the contract or employment relationship, employment benefits in the past, and employment benefits in the future.

## V.
## LIQUIDATED DAMAGES

36. Pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii), Plaintiff further seeks liquidated damages in an amount equal to wages, salary, employment benefits, or other compensation lost by Plaintiff.

## VI.
## ATTORNEYS' FEES

37. Plaintiff seeks all reasonable and necessary attorneys' fees in this case, including preparation and trial of this lawsuit, post-trial, pre-appeal legal services, and any appeals.

## VII.
## JURY DEMAND

38. Plaintiff demands a trial by jury of all the issues and facts in this case and tenders herewith the requisite jury fee.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that:

1. The Court assume jurisdiction of this cause;

2. The Court award Plaintiff damages as specified above;

3. The Court award Plaintiff reinstatement or, in the alternative, front pay;

4. The Court award Plaintiff's reasonable attorneys' and expert fees and costs;

5. The Court award Plaintiff pre- and post-judgment interest at the highest rates allowed.

6. Plaintiff further prays for any such other relief as the Court may find proper, whether at law or in equity.

**Respectfully submitted,**

**Shellist, Lazarz, Slobin, LLP**

**/s/ Paul R. Harris**
State Bar No. 25059905
pharris@eeoc.net
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
(713) 621-2277 -Telephone